CROWN LIFE INSURANCE COMPANY, a Canadian Corporation, Plaintiff–Appellant,

v.

Kerry P. CRAIG and Craig/Associates, Inc., an Illinois Corporation, Defendants–Appellees.

No. 92–3180.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1993.

Decided May 28, 1993.

Rehearing Denied June 30, 1993.

David J. Novotny (argued), J. Robert Geiman, and Donald A. Murday, Peterson & Ross, Chicago, IL, and Kevin R. Hayes, Alexandria, VA, for plaintiff-appellant.

Joseph M. Condron, Sanders, Smith & Cross; Lawrence C. Casano, Pittman & Associates; and William J. Stonikas, William Cook (argued), and Steven M. Ritter, Cook & Ritter, Chicago, IL, for defendants-appellees.

Before CUMMINGS and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Crown Life Insurance Company ("Crown Life") appeals the district court's imposition of sanctions, findings of fact and refusal to allow a witness to testify in this diversity case. After a bench trial, the district court entered judgment in favor of Crown Life on a check that Kerry P. Craig and Craig/Associates, Inc. (collectively "Craig") had written to Mr. Craig, but the district court found in favor of Craig on three other checks. The district court also granted Crown Life judgment on its claim for payment of loan indebtedness, although not in the full amount that Crown Life claimed. After finding that Crown Life had violated discovery orders, the district court sanctioned Crown Life by entering a default judgment in favor of Craig on its counterclaim. We have jurisdiction to decide this appeal pursuant to 28 U.S.C. § 1291. We affirm the judgment and the sanction.

## I.

### A. General Background

Crown Life filed this action against Craig, its former Chicago general agency. In its complaint Crown Life alleged that Craig wrongfully drew eleven checks on Crown Life's funds in a bank account known as the "branch account". Crown Life also sought recovery of an additional amount over $500,000, which Crown Life alleged it had loaned to Craig under certain financing agreements during the term of Craig's general agency. Craig filed a counterclaim alleging that it was owed renewal commissions by Crown Life.

Prior to trial on the claim and counterclaim, the district court granted summary judgment in favor of Crown Life on seven of the eleven branch account checks Craig wrote. Of the four remaining checks, three were written to brokers and one was payable to Mr. Craig. The three broker checks were drawn to pay producer bonuses and commissions to brokers who had placed business with Crown Life through Craig. The district court found that Crown Life had implicitly authorized Craig to use the account for these purposes by allowing such use in the past. Thus, the district court found in favor of Craig on these three checks. The district court found that the remaining check written to Mr. Craig was unauthorized and granted judgment in favor of Crown Life on it.

With regard to Craig's alleged loan indebtedness, the main issue at trial was whether Crown Life had agreed to forgive or write-off certain loans made to Craig. Most of the controversy on this issue centered specifically on a loan relating to arbitration in an unrelated dispute between Craig and Clarke Lloyd, a former senior vice president for Crown Life. Ultimately, the district court found that Crown Life had forgiven the arbitration loan, and awarded Crown Life judg-

ment on only a part of its claim for loan repayments.

The counterclaim concerned the amount of renewal commissions due Craig. Other than Summaries of Renewal Commissions Payable and other Crown Life internal documents, the only evidence offered on this issue was the testimony of Clarke Lloyd. Lloyd testified regarding a rule-of-thumb in the insurance industry for evaluating future renewal commissions. Crown Life also submitted into evidence the general agency agreement it had signed with Craig. (Crown Life Ex. 3). This agreement provided that renewal commissions were payable only as they were "earned", i.e., when the premium was paid by the policyholder. According to the agreement, renewal commissions would be paid over a ten-year period following a general agent's termination.

A Crown Life employee, Robert Currie, testified at trial about a database containing data for each policy sold by Crown Life's general agents, including Craig. The parties and the district court referred to this data as the "raw data". During the pendency of the trial, Craig's expert witness informed counsel for Craig that the documentation given to him (i.e., the documents produced by Crown Life) was insufficient for him to formulate an opinion on the amount of commissions due Craig. Counsel for Craig then moved to dismiss Crown Life's complaint because it had not produced the raw data.

Three days before the conclusion of the trial, counsel for Crown Life informed the district court that one of its witnesses, Daniel Martineau, would not be available to testify as scheduled. The district court refused to continue the trial to allow this testimony. The district court also sanctioned Crown Life for not producing the raw data.

The district court held that Crown Life was entitled to judgment on the check payable to Craig on the branch account and that Crown Life was entitled to judgment for a portion of the loan indebtedness it sought to recover against Craig. The district court also granted judgment in favor of Craig on the counterclaim for renewal commissions. As a sanction, the district court did not allow Crown Life to rely on its own figures for renewal commissions, did not allow it to rebut Lloyd's rule of thumb, and did not allow it to rely on the contract provision providing payment as it is earned. Therefore, the amount of the counterclaim judgment was established based on the rule-of-thumb estimate described by Lloyd.

On appeal, Crown Life argues that the district court's sanction was based on a clearly erroneous factual finding that Crown Life violated the discovery order, or in the alternative, that the sanction was too harsh and an abuse of discretion. Crown Life also challenges the district court's refusal to continue the trial to hear testimony from Martineau. Finally, Crown Life argues on appeal that the district court's finding that the three broker checks were authorized and its finding that the arbitration loan was forgiven were clearly erroneous.

### B. Facts Relevant to the Discovery Sanction

To resolve the challenge to the discovery sanction, we must consider in some detail the history of discovery. Craig propounded its Request for Production of Documents on April 13, 1990. (Crown Life, Ex. A).[1] In response to requests numbered 3 and 12, Crown Life produced some copies of documents entitled Agency Management Status

---

1. These requests included:
   3. Any and all correspondence, notes, memoranda, or other written documents including, but not limited to, summary sheets or valuation sheets, reflecting summaries or calculations of renewal commissions, potential overrides, and/or collection fees regarding the Defendant's agency operations in the geographical areas encompassing Chicago, Illinois, and Peoria, Illinois, including, but not limited to, those for par, non-par, universal life, and disability policies.

* * *

12. Any and all correspondence, notes, memoranda, or other written documents relating to the calculation of commissions due the Defendants from the Plaintiff, including but not limited to, documents relating to the calculation of group bonuses, paid-for bonuses, net bonuses, quality volume bonuses, and persistency bonuses, for the period of January, 1980 through December, 1989, for the geographical areas encompassing Chicago, Illinois and Peoria, Illinois.

Reports ("AMSRs"), which reflected summaries of renewal commissions earned by Craig. Crown Life also produced documents entitled Agent's Statement of Earnings and Account ("ASEAs"). (Crown Life, Ex. B).

Crown Life propounded interrogatories to Craig, including question 14, which. asked Craig to identify those persons it expected to call as expert witnesses at trial. In response to question 14, Craig stated that it had not yet retained an expert witness, but that once it did, Craig would provide the requested information.

On July 19, 1990, Craig filed a motion to compel, alleging that Crown Life had failed to produce documents, including documents responsive to request number 12. (R. 29). On August 14, 1990, the motion was argued before Magistrate Judge Weisberg, to whom the district judge had referred all matters concerning discovery. At that time, Magistrate Judge Weisberg ordered Crown Life to produce ASEAs and AMSRs for the remaining dates requested, and he also ruled that Craig was entitled to an affidavit signed by a responsible Crown Life representative stating that there were no underlying documents to support these summaries. (Transcript of Proceedings before Magistrate Judge Weisberg, September 5, 1990). Craig received an affidavit signed by Kevin R. Hayes, Associate General Counsel for Crown Life, stating that all documents responsive to the request had been produced. (Appellee's Supplemental Appendix 5).

On September 24 and 25, 1990, Craig deposed Robert Currie, Crown Life's Manager of U.S. Individual Agency Services. In his deposition testimony, Currie referred to a year-end computer printout of total renewals attributable to each general agency and a "Summary of Renewal Commissions Payable" produced every year in December. Thereafter, Craig filed another motion to compel, seeking production of the documents to which Currie referred in his testimony. (R. 55). In response, Crown Life argued that the summaries were not relevant because these statements were internal memoranda that reflected mere estimates of renewal commissions and not actual earnings. Magistrate Judge Weisberg ordered Crown Life to produce any and all documents that reflected the calculation of the renewal commissions by December 4, 1990. (Transcript of Proceedings before Magistrate Judge Weisberg, November 13, 1990, at 6–9).

After the deadline had passed, Craig filed another motion to compel. (R. 66). Two days before the hearing on the motion, counsel for Crown Life produced some responsive documents. At the hearing, Magistrate Judge Weisberg granted Craig's motion to compel and allowed Crown Life until January 24, 1991 to comply with its order to produce the documents. Magistrate Judge Weisberg also awarded Craig attorneys' fees in the amount of $250 pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure. (Transcript of Proceedings before Magistrate Judge Weisberg, January 10, 1991, at 5–6).

Craig took the deposition of Daniel Martineau, Crown Life's Director of Actuarial Services. Martineau's department is responsible for producing the Summary of Renewal Commissions Payable and is responsible for maintaining the program and database that generates the summaries. Martineau was questioned at length about the summaries and how they are prepared.

On January 18, 1991, Craig received a letter from counsel for Crown Life stating that Crown Life would produce further documents on January 21, 1991, placing Crown Life in full compliance with Magistrate Judge Weisberg's order. (Appellee's Supplemental Appendix, 10). When the documents did not arrive, Craig filed a motion to dismiss or for other sanctions for failure to produce these documents. At the hearing on this motion, Magistrate Judge Weisberg ordered that sworn statements be filed by responsible officials of Crown Life stating that a search had been made for the particular documents and that they had not been found. (Transcript of Proceedings before Magistrate Judge Weisberg, January 31, 1991, at 5).

On February 11, 1991, the parties appeared for a status hearing before the district court. At that time, counsel for Crown Life represented that Crown Life had no further responsive documents. (Transcript of Proceedings before Judge Duff, February

11, 1991, at 5). On February 13, 1991, Hayes, Associate General Counsel for Crown Life, filed an affidavit stating that a search had been made for the documents.[2] The district court set a discovery cutoff of May 15, 1991. (R. 84).

On July 2, 1991, counsel for Craig propounded its request for supplementation of documents. The only supplemental requests relating to renewal commissions were requests for ASEAs, AMSRs, and Summaries of Renewal Commissions. (R. 116, Ex. A). Apparently, Craig sought the most current documents to supplement others that had already been produced for earlier time periods. (Tr. 494–501).

Six days before trial, Craig filed a motion to compel based on Crown Life's failure to supplement its production of documents. (R. 116). Three business days before the pretrial conference, Craig's attorneys advised Crown Life that they intended to call an expert witness at trial. (R. 128–54). Crown Life filed a motion to bar Craig's expert because it felt the disclosure of the expert was not timely. (R. 128–119). At the pretrial conference, the district court denied Crown Life's motion to bar Craig's expert, but the district court ordered Craig to provide Crown Life with an expert's report. The district court also directed Crown Life to produce the updated summaries. These summaries were produced September 13, 1991. The trial began on September 17, 1991.

During the trial, Currie testified on cross-examination about a database containing raw data that pertained to commissions on each policy sold by Craig. Later that day, Clarke Lloyd confirmed the existence of such a database, and Craig informed the district court that Craig's expert witness had insufficient information to enable him to testify. Craig then moved the district court to dismiss the complaint and grant judgment on Craig's counterclaim because Crown Life had failed to produce the raw data.

On September 24, 1991, the district court found that the raw data was available to Crown Life and retrievable by it. Furthermore, the district court believed that Crown Life used the raw data to prepare its own witness, Martineau, and planned to use the raw data to rebut Craig's case. The district court gave two reasons for not allowing Martineau to testify: one was that he was not available at the scheduled time (Tr. 537) and the other was that Crown Life would not be allowed to put on any evidence to rebut Lloyd's rule of thumb. (Tr. 549). In its memorandum opinion, the district court stated:

57. Nonetheless, because a number of his policies have been renewed since he left Crown Life, Craig is entitled to a certain amount of money in commissions. However, because of Crown Life's refusal to respond to certain of Craig's discovery requests, it is impossible to compute the amount of renewal commissions due Craig. Specifically, Crown Life did not make available certain internally generated documents with which Craig could have accurately computed the amount of renewal commissions due. Because he lacked these documents, Craig was unable to contest Crown Life's calculation of commissions due.

58. The court warned Crown Life during trial that its refusal to timely produce these documents could result in sanctions. Having determined that the information which Crown Life withheld is critical to Craig's case, and that Crown Life offered no reasonable excuse for its failure to pro-

2. That affidavit stated:
2. I have caused a search to be conducted for the following documents:
(a) summaries of renewal commissions payable for the years 1989 and 1990;
(b) written requests by CRAIG/ASSOCIATES INC., to the financing committee of CROWN LIFE INSURANCE COMPANY for loans, advances, and financing;
(c) entries in the minutes of the financing committee referring to the Chicago Agency;
(d) the write-off file in existence at the time of Robert Currie's deposition.
3. Based on searches for these documents which were conducted by CROWN LIFE personnel at my direction, your affiant states that CROWN LIFE INSURANCE COMPANY has produced all documents meeting the above description which could be located.
(R. 185).

duce the documents, the court will sanction Crown Life in the following manner: Crown Life may not rely upon its own calculations of commissions due Craig; Craig may use "Clarke Lloyd's rule of thumb" (described in detail below) to calculate the amount of commissions owed him by Crown Life; and Crown Life may not rely upon the contract provision which permits it to pay renewal commissions only after the premiums are collected and deposited in Crown Life's account—that is, Craig may recover the estimated future value of his commissions as the premiums are paid to Crown Life.[3]

(Mem.Op. at 15).

Before the district court's ruling, counsel for Crown Life had informed the district court that the data was never put into "document" form and that until recently it had been impossible to obtain a printout of the data. Nevertheless, Crown Life offered to make the data available.

## II.

As a sanction the district court ordered that Crown Life would not be allowed to: present or rely on its own calculations of renewal commissions; rebut Lloyd's rule-of-thumb; or rely on the portion of the contract which provides that renewal commissions would be payable over a ten-year period. Crown Life urges that this amounted to a default judgment on Craig's counterclaim.[4] Craig responds by arguing that the sanction did not amount to a default judgment, but rather the sanction was similar in kind to other sanctions such as the exclusion of evidence or the imposition of fines.

Craig cites a Ninth Circuit case, which held that the exclusion of certain exhibits at trial did not amount to a dismissal under Federal Rule of Civil Procedure 37(b)(2)(C). *Von Brimer v. Whirlpool Corporation*, 536 F.2d 838 (9th Cir.1976). That case can be distinguished, however, because this is not a case where some exhibits were excluded because they were untimely. Here, the district court's ruling was that "Craig may recover the estimated future value of his commissions." (Mem.Op. at 15). Crown Life was therefore not allowed to present any witnesses or evidence regarding the amount of renewal commissions. When a district court prevents a defendant from presenting any evidence whatsoever on a claim this normally leads to a default judgment. That is exactly what occurred here.

That we review an order granting a Rule 37 default or dismissal for abuse of discretion is clear. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam). It is less clear how far a district court's discretion extends when dealing with Rule 37 dismissals or default judgments. Crown Life argues that there must be a finding of wilfulness or bad faith before a default judgment can be entered as a sanction. *Fox v. Commissioner*, 718 F.2d 251, 254 (7th Cir.1983). *See also Philips Medical Systems International, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir.1992); *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 75 (7th Cir. 1990); *Dole v. Local 1942, International Brotherhood of Electrical Workers*, 870 F.2d 368, 371–72 (7th Cir.1989); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1179 (7th Cir.1987). Craig, however, points out that other cases in this circuit have not re-

---

**3.** It appears that this portion of the Memorandum Opinion has an error. At the end of paragraph 58, the district court states that Craig may recover the estimated future value of his commissions "as the premiums are paid to Crown Life." However, earlier in that same paragraph the district court indicated that Crown Life could not rely on the portion of the contract allowing payment of renewal commissions over a ten year period as the premiums were paid. We need not be concerned with this apparent inconsistency because the district court makes clear in paragraph 68 of the Memorandum Opinion that it "prohibited Crown Life from relying upon the

contract provision which provides for payment of commissions only after the premium has been deposited in Crown Life's bank account." (Mem.Op. at 17).

**4.** Federal Rule of Civil Procedure 37 allows for dismissal of a plaintiff's claim as a sanction for plaintiff's failure to comply with discovery. Similarly, when a defendant fails to comply with discovery, Rule 37 provides that a default judgment may be awarded. We treat both Rule 37 dismissals and default judgments the same for the purposes of this discussion.

quired such a finding before affirming a default judgment as a sanction. *Govas v. Chalmers*, 965 F.2d 298 (7th Cir.1992). *See also Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589 (7th Cir.1992); *Profile Gear Corp. v. Foundry Allied Industries, Inc.*, 937 F.2d 351 (7th Cir.1991) (even absent finding of dishonesty, we affirm default judgments due to dilatory tactics); *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1362 (7th Cir.1989) (dismissal appropriate when there is clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing).

Craig argues that *Govas* changed the standard set forth in *Fox*, noting that *Govas* is the more recent decision of this circuit. However, *Bruetman* is even more recent, and in that case, the panel stated, "Sanctions may only be imposed where a party fails to comply with a discovery order and displays wilfulness, bad faith or fault." *Bruetman*, 982 F.2d at 214 (citation omitted). Further complicating this issue, a panel of this circuit recently stated that, "The cases in this circuit, at any rate, do not set up a row of artificial hoops labeled 'bad faith' and 'egregious conduct' and 'no less severe alternative' through which a judge must jump in order to be permitted by us appellate judges to dismiss a suit." *Newman*, 962 F.2d at 591.

■ Although these decisions may appear somewhat inconsistent on their face, this inconsistency is not fatal to our analysis. *Govas*, *Powers* and *Profile Gear* all required, if not wilfulness and bad faith, at least "contumacious conduct", "dilatory tactics", or the failure of less drastic sanctions. Even in *Newman*, the panel noted that a district court's discretion in awarding a default judgment has some limitations.

A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal of the suit, a defendant's by entry of a default judgment. Of course the circumstances of the failure must be considered, because the judge must be guided by the norm of proportionality that guides all judicial applications of sanctions.... If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction.

*Newman*, 962 F.2d at 591 (citations omitted). Therefore, even assuming that there are no "hoops" through which a district judge must jump (such as a finding of wilfulness, etc.), an award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery. Ultimately, all of these cases support the district court's sanction in this case because the sanction is proportionate to Crown Life's wilful failure to comply with discovery orders and Crown Life's record of contumacious conduct.

■ In support of its argument that the sanction was an abuse of discretion, Crown Life urges that the district court's factual finding underlying the sanction was clearly erroneous and that in fact, there was no discovery violation with regard to the raw data because it was never requested. We do not agree. Craig requested documents reflecting "summaries or calculations of renewal commissions" and "documents relating to the calculation of commissions". These requests make clear that Craig desired data and information regarding the *calculation* of renewal commissions, not merely the summaries of renewal commissions. The data that Crown Life used to compute commissions was the raw data discussed at trial. The requests cover this data. Furthermore, at the hearing before Magistrate Judge Weisberg on September 5, 1990, counsel for Craig made it clear that Craig sought underlying documents as well as the summaries of renewal commissions payable when he said, "[T]he plaintiffs should produce these documents to us and *any underlying documents which supported these computer entries* on the documents that we are talking about." (Transcript of Proceedings before Magistrate Judge Weisberg, September 5, 1990, at 3) (emphasis added). The requests for production and this statement convince us that Craig requested the data.

Crown Life also argues that the data is not "documents" because it was never in any hard copy form and Craig requested "written documents". However, the Advisory Com-

mittee notes to the 1970 amendment of Federal Rule of Civil Procedure 34 make clear that computer data is included in Rule 34's description of documents. Therefore, Crown Life's failure to make the raw data available amounts to a violation of discovery orders. The district court's decision that Crown Life had violated the discovery orders was not clear error, because we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

We must now determine whether the district court's specific sanction in this case amounted to an abuse of discretion. As we noted above, a default judgment may be awarded if it is a sanction proportional to the discovery failure. We will presume proportionality when there are wilful or bad faith violations of discovery orders. The same presumption applies when there is a pattern of contumacious conduct or dilatory tactics or the failure of less drastic sanctions.

Crown Life argues that even if the raw data constitutes discoverable "documents" pursuant to Rule 34, the raw data was inaccessible to Crown Life. Therefore, its failure to produce the raw data was not wilful. This argument is unavailing. Even if we accept, for purposes of this discussion, that at the time Craig requested the data Crown Life could not access the data, Crown Life is not relieved from its responsibility to make the data available. Rule 34 contemplates that when data is in an inaccessible form, the party responding to the request for documents must make the data available. The Advisory Committee notes to the 1970 Amendment state:

> It makes clear that Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form.... Similarly, if the discovering party needs to check the electronic source itself, the court may protect respondent with respect to

preservation of his records, confidentiality of nondiscoverable matters, and costs.

While it may be true that Crown Life could not access the data at the time of the request, that does not mean that the data did not exist or was not discoverable. Crown Life had a duty to make the data available to Craig. Well over a year was dedicated to discovery. Surely, Crown Life could have made the data available during that time. Therefore, the district court's conclusions that the raw data was discoverable and that it had been requested are not clearly erroneous.

Additionally, the district court characterized Crown Life's failure to produce the data as a "refusal" to produce. (Mem.Op. at 15). We interpret this as a finding that Crown Life's failure was wilful. Almost a full year before trial, Craig received an affidavit signed by Kevin R. Hayes, Associate General Counsel for Crown Life, stating that all documents responsive to the document requests had been produced. (Appellee's Supplemental Appendix 5). Based on the fact that the data was in the exclusive control of Crown Life, that it was discoverable and that Crown Life nevertheless failed to make it available, this affidavit is blatantly false. Crown Life attempts to convince us that because the motions to compel usually mentioned documents by name, it could not have known that Craig needed the raw data. However, Crown Life sent Craig an affidavit signed by Hayes indicating that it had produced all the documents relevant to the discovery requests. Therefore, Craig did not know, nor could it have known until Currie's trial testimony, that the raw data existed. The motions to compel mention summaries specifically because Craig knew the summaries existed. Crown Life cannot say in an affidavit that no documents exist and then fault Craig for not requesting those documents specifically in a motion to compel.

Also, the district court found that Crown Life's response to discovery was marked by contumacious conduct. (Tr. 549). Given the facts set forth earlier in this opinion, we cannot disagree. Less severe sanctions had failed. Even in the face of an award of attorneys' fees, Crown Life did not comply

with discovery orders. Because Crown Life's failure to comply with discovery orders was wilful and demonstrated contumacious conduct and less severe sanctions failed, the sanction here involved was proportionate to the violation. The district court did not abuse its discretion, and we affirm the sanction.

### III.

■ Crown Life's second challenge is to the judgment itself. Crown Life argues that the district court erred in refusing to allow Daniel Martineau to testify. The district court treated the request that trial be delayed for Martineau to testify as a motion to continue. (Tr. 532). We will reverse a district court's decision regarding trial management only for an abuse of discretion. *Mraovic v. Elgin, Joliet & E. Ry. Co.*, 897 F.2d 268, at 270 (7th Cir.1990). "Generally, the common thread in the rare cases that reverse the denial of a continuance is the existence of changed circumstances to which a party cannot reasonably be expected to adjust without an extension of time." *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1222–23 (7th Cir.1990).

■ Crown Life's only argument is that the district court should have allowed such a continuance because Martineau's testimony would have added only half a day to the two week trial. Crown Life was not prejudiced by any changed circumstances. The district court had set the trial date a full three months before trial. Crown Life had ample opportunity to arrange for Martineau's testimony or for the testimony of another employee in the Department of Actuarial Services. Furthermore, this trial lasted two weeks, giving Crown Life sufficient opportunity to have Martineau available for testimony. Denying a continuance was not an abuse of discretion.

■ Finally, Crown Life argues that several of the district court's other factual findings were clearly erroneous. Only two of these contentions merit comment. These are

whether the district court erred in its determination that the branch account checks written to brokers were authorized, and whether the district court also erred in its finding of fact that the arbitration loan was forgiven. We will reverse a district court's factual finding only when we are convinced that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "Where two permissible conclusions can be drawn, the fact finder's choice cannot be clearly erroneous." *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989).

With regard to whether Crown Life implicitly authorized Craig to use the branch account to pay broker commissions, Crown Life does not refer us to any specific evidence to rebut Mr. Craig's testimony that Crown Life had authorized such uses of the account. Mr. Craig gave credible testimony that he had used the branch account for such purposes in the past, and the district court is entitled to rely on that testimony. Therefore, the factual findings regarding the branch account checks were not clearly erroneous.

■ Crown Life also argues that the district court's finding that Crown Life and Craig had agreed that the arbitration loan was an advance that Craig was not required to repay was clearly erroneous. This finding was based on evidence that despite its general policy, Crown Life never issued a promissory note for this alleged indebtedness and on Mr. Craig's testimony that he was not required to repay the loan.

Crown Life points out that the cover letter with the check identified the money as "a special loan with interest at 10%." (Crown Life Ex. 124). Crown Life also argues that Michael O'Brien,[5] Craig's attorney who was present at a meeting where the arbitration loan was discussed, "admitted at trial that no one specifically told him that Crown Life would 'forgive' the arbitration loan." (Brief of Appellant, 48). Crown Life notes that Currie testified that the arbitration loan was carried on the Agent's Statement of Earn-

---

5. In its brief, Crown Life refers to this person as John Bingler, another of Craig's attorneys. However, the record cite refers to O'Brien's testi-

mony. Bingler did not testify at trial. Therefore, we assume that Crown Life intended to refer to O'Brien.

ings and Account Report, indicating that Crown Life expected Craig to repay it. Based on this evidence, Crown Life concludes that the district court's findings with regard to this advance were clearly erroneous.

██ First, the evidence showed that with the exception of this "loan", Crown Life always required the general agent to sign a note. Therefore, the district court was free to conclude that the letter accompanying the check had little value compared with the admitted fact that no note accompanied this loan. Furthermore, we note that O'Brien's testimony was equivocal. On direct examination, he stated that it was his understanding that Craig did not have an obligation to repay this advance. (Tr. 409). The evidence to which Crown Life refers is that on cross-examination, O'Brien testified that he did not recall anyone at Crown Life specifically telling him that the arbitration advance would be forgiven. (Tr. 426). Finally, we point out that Mr. Craig testified that it was his understanding that the advance need not be repaid. The district court found this testimony to be highly credible. When a factual finding is based upon a credibility determination, "[w]e are bound by the trial court's finding of fact if upon our review of the entire record the district court's account of the evidence is plausible." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1416 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). Given Mr. Craig's testimony and the lack of a note, the district court's findings with regard to the arbitration loan are plausible, and we affirm the judgment in its entirety.

AFFIRMED.