**SECOND CHANCE BODY ARMOR, INC., Plaintiff,**

v.

**AMERICAN BODY ARMOR, INC., Defendant.**

No. 94 C 6178.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 8, 1998.

Thomas John Ring, Shashank S. Upadhye, Pitthast & Ring, Stephen G. Kehoe, Chicago, IL, Camille M. Miller, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, PA, for Plaintiff.

Peter Vincent Baugher, Veronica Gomez, Schopf & Weiss, Scott Gene Early, James Daniel Dasso, Marianne C. Holzhall, Foley & Lardner, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Pending is Plaintiff's motion for sanctions pursuant to Rules 37(a)(4) and 37(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court grants Plaintiff's motion in part and denies it in part.

### INTRODUCTION

This is a trademark case. Plaintiff sued Defendant to prevent alleged infringement of Plaintiff's "K–47" trademark, which it uses for a steel plate sold with its body armor. Defendant had called one of its tactical protective vests an "AK–47."

On December 9, 1994, District Judge Ann Williams ordered the parties to "informally exchange discovery and have settlement discussions." During the 1995 "informal discovery" and prior to Defendant answering Plaintiff's complaint, Plaintiff asked Defendant for information regarding the sales of Defendant's AK–47 vests primarily to assist in computing potential damages.[1] In response, Defendant produced invoices in dribbles to Plaintiff which reflected small sales of AK–47 vests.[2] Plaintiff states that, based on the above sales information, Defendant represented to Judge Williams numerous times that the AK–47 was a small selling item. For example, in a May 19, 1995 letter, Defendant's counsel stated that its "best information" was that it had sold 545 AK–47 vests from 1989–1994 for total sales of $383,000. (See Pl. Supp. Mem. Ex. G.) Plaintiff argues that Defendant used these invoice amounts to construct (what Plaintiff now believes were

---

1. The time frame for which Plaintiff sought AK–47 sales records has varied in Plaintiff's briefs. In its original motion, Plaintiff said it sought sales data for the period 1982–1994. (See Pl. Mot. at 8.) In its supplemental brief and in its reply brief (which is the most recent brief), Plaintiff stated that it sought sales figures for the period 1985–1994. (See Pl. Supp. Mem. at 1.)

In its second supplemental brief, Plaintiff states that the "period in question" is 1983–1994. (See Pl. Sec. Supp. Mem. at 5.)

2. For example, Defendant produced five invoices for 1989, four invoices for 1991 and two invoices for 1993. (See Pl. Supp. Mem. at 5, Ex. F.)

intentionally "low-ball") settlement figures. (*See* Pl. Supp. Mem. at 5.)

The case did not settle. Therefore, the parties proceeded with more discovery. On January 29, 1997, Plaintiff's attorney wrote to Defendant's attorney and commented that Plaintiff believed that Defendant's production of AK–47 sales information was incomplete. (*See* Pl. Mot., Ex. 3.) Soon thereafter, on January 31, 1997 and February 5, 1997 respectively, Plaintiff submitted to Defendant its second set of interrogatories and document requests. (*See* Pl. Mot., Exs. 1 & 2.)

On April 8, 1997, after a number of correspondences between the parties' attorneys attempting to resolve the dispute regarding whether there was additional AK–47 sales information (*see, e.g.,* Pl. Mot., Exs. 6, 8, 9), Plaintiff moved to compel Defendant to produce additional AK–47 sales information and for sanctions. In support of its motion, Plaintiff argued that Defendant had withheld AK–47 sales information, including individual sales invoices (also known as "picking tickets") as well as "summary sales reports" and computer disks which allegedly contained such sales information.

In an order dated April 23, 1997, Magistrate Judge Rebecca Pallmeyer granted Plaintiff's motion to compel in part and ordered that, by May 7, 1997, Defendant produce:

(1) the computer disks (or hard copy thereof) of AK–47 sales records; and (2) an affidavit or affidavits of individuals who can explain Defendant's failure to produce these materials earlier, with specific reference to (a) an affidavit by Leah Crummey [a former employee who testified that Defendant possessed more sales information in 1995 than it produced], (b) deposition testimony of sales persons regarding sales substantially in excess of those reported by Defendant in its discovery responses, and (c) Defendant's ability in 1994 and 1995 to provide detailed information promptly in response to an FTC request apparently based on documents that have not been produced in this case.

Subsequently, Plaintiff began to assemble mounting information regarding the "true" sales figures of Defendant's AK–47 tactical vests and sought to compel further information from Defendant. Plaintiff recounted this information (which Plaintiff argues demonstrates Defendant's "evasive and dilatory conduct" and that Defendant "deliberately and willfully withheld such information for over two years") in Plaintiff's Supplemental Memorandum in Support of its Motion to Compel and for Sanctions, Second Supplemental Memorandum in Support of its Motion to Compel and for Sanctions, and Reply to Defendant's Response to Motion for Sanctions. Plaintiff stated, among other things, in its briefs that:

- Defendant's former president stated during his deposition that Defendant sold "many hundreds" of AK–47 vests each year between 1984–1991 (*see* Pl. Supp. Mem. at 7);

- two of Defendant's employees (one a former employee) have stated that Defendant reviewed its AK–47 sales records in 1995, and Plaintiff argues that Defendant therefore knew in 1995 that it had more AK–47 sales than it demonstrated in the documents it then produced to Plaintiff (*see* Crummey Aff. ¶ 9–10; Cindy Yankee Naismith Dep. at 18–23);

- a former employee of Defendant from 1983–95 has stated by affidavit that "[a]t any time, ... I, among others, could quickly locate any records that the company kept, including both computerized and hard copies of the monthly summary sales reports" (*see* Pl. Reply, Ex. 2, Duncan Aff. ¶ 3);

- Plaintiff received records from one of Defendant's sales representatives which revealed that this individual sold around ten times more vests in 1991 than Defendant had represented during two years of litigation (*see* Pl. Supp. Mem. at 9–10);

- during an unrelated FTC action in early 1995, Defendant was able to quickly determine the number of purchases of certain vest purchasers for the 1989–1990 time frame (*see* Pl. Supp. Br. at 2–4).

On August 12, 1997, this court further granted Plaintiff's motion to compel, in part, ordering that Defendant tender additional sales documentation and computerized information.

Defendant's response to Plaintiff's motion was that Defendant had a difficult time locating its AK–47 sales information, particularly for earlier years. Defendant contended that Defendant's ownership succession and a bankruptcy from 1992–93 complicated the problem. Additionally, the company changed accounting systems in the late 1980s and in 1997. (*See* Def. Resp. to Motion to Compel at 1, 2.) [3]

Defendant eventually produced relevant AK–47 sales documents and computer disks in response to Plaintiff's motion to compel and additional briefs. In May of 1997, Defendant produced summary sales and shipping reports for each year from 1987–1994. In June, Defendant produced its computer backup disks and tapes from 1985–94. In July, Defendant produced nearly 20 boxes of posting and sales history computer reports containing order by order sales data for all ABA products sequentially by invoice from the late 1980s through 1994.

After receiving this information from Defendant, Plaintiff now believes that Defendant's AK–47 sales amounted to approximately $2.5 million rather than the $383,000 total sales figure Defendant presented in 1995.

### PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff now seeks sanctions. First, Plaintiff seeks, pursuant to Fed.R.Civ.P. 37(a)(4), that Defendant pay "all its attorneys' fees and costs incurred for all efforts undertaken pursuant to its motion to compel and for sanctions." (Pl. Reply at 13.) Plaintiff also seeks, pursuant to Fed.R.Civ.P. 37(b)(2), that this court strike each of Defendant's nine (9) affirmative defenses and make evidentiary

findings against Defendant for use at trial. (*See* Pl. Supp. Br. at 22; Pl. Reply at 10–12.)

### I. EXPENSES INCURRED FOR MAKING THE MOTION TO COMPEL.

Plaintiff first seeks, essentially pursuant to Fed.R.Civ.P. 37(a), to recover "all of its attorneys fees and costs incurred for all efforts undertaken pursuant to this motion to compel and for sanctions." (Pl. Reply at 13.) Rule 37(a)(4) allows the party who brought a motion to compel to recover the "reasonable" expenses incurred in making the motion, including attorney's fees, if the court grants the motion or if the disclosure is provided after the motion was filed. *See Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir.1994) ("Rule 37(a)(4) presumptively requires every loser to make good the victor's costs."). *See also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 8 FEDERAL PRACTICE & PROCEDURE § 2288 at 787 (1970) ("The great operative principle of Rule 37(a)(4) is that the loser pays."). Under Rule 37(a)(4), the winner of the motion to compel thus will be entitled to its reasonable expenses incurred, including fees, unless the opponent establishes that his position was "substantially justified" or "that circumstances make an award of expenses unjust."

■ Here, Magistrate Judge Pallmeyer granted, in part, Plaintiff's motion to compel on April 23, 1997. In addition, this court granted, in part, Plaintiff's motion to compel on August 12, 1997. As the prevailing party, Plaintiff should be entitled to the reasonable expenses, including attorneys' fees, it incurred in making its motion. As described above, Plaintiff's motion sought sales information which Defendant apparently could have timely produced in 1995. There is evidence which suggests that Defendant knew in 1995 that this material existed or, at the least, failed to adequately search for the information.

---

3. Plaintiff strenuously disputes Defendant's characterization that it was too difficult to retrieve the sales information, arguing, as stated above, that: (1) Defendant quickly compiled its sales information for the FTC in 1995; (2) present and former employees of Defendant have stated that

they actually conducted a search for AK–47 sales information in 1995 which yielded results; and (3) at least one former employee has stated that the sales information was easily accessible to Defendant.

Defendant has not established a substantial justification for its failure to timely submit the material nor any circumstances that make an award of expenses unjust. Defendant has argued that it had difficulty locating the information because of a previous bankruptcy and corporate ownership succession. Defendant, however, has failed to adequately rebut Plaintiff's persuasive evidence that Defendant could have quickly and accurately presented its AK–47 sales information earlier. Under the circumstances here, the court deems it warranted and necessary to award Plaintiff the reasonable expenses it incurred, including attorneys' fees, in making the motions described above.

## II. *STRIKING THE AFFIRMATIVE DEFENSES.*

■ Plaintiff also seeks, pursuant to Rule 37(b)(2), that this court strike Defendant's affirmative defenses. Rule 37(b)(2) provides that a district court "may" impose various sanctions on a party who fails to comply with a court order, including the striking of portions of pleadings. *See, e.g., Brandt v. Vulcan, Inc.,* 30 F.3d 752, 755 (7th Cir.1994). Sanctions under Rule 37(b) may only be imposed where "a party displays 'wilfulness, bad faith, or fault.'" *Langley v. Union Elec. Co.,* 107 F.3d 510, 514 (7th Cir.1997) (quoting *Philips Medical Sys. Int'l, B.V. v. Bruetman,* 982 F.2d 211, 214 (7th Cir.1992)). "Fault" does not mean the non-complying party's "subjective motivation;" instead, it "only describe[s] the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation." *Id.* (quoting *Marrocco v. General Motors Corp.,* 966 F.2d 220, 223 (7th Cir.1992)).

Here, Plaintiff argues that sanctions are appropriate because Defendant failed to comply with Judge Williams' 12/9/94 order to "informally exchange discovery" for a period of two and a half years. (*See* Def. Reply at 9.) In addition, Plaintiff argues that Defendant's explanation of its failure to produce its

AK–47 sales information (such as summary sales reports) in response to Judge Pallmeyer's 4/23/97 order was "woefully lacking" and constituted a violation of that order. (*See* Def. Reply at 9; Pl. Supp. Br. at 13–21.) Plaintiff also states that Defendant's discovery abuse is a continuing problem as Plaintiff had to file a motion to compel earlier in this case.[4]

■ An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery. *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382 (7th Cir.1993). Here, under the circumstances, this court finds that striking Defendant's affirmative defenses would be inappropriate and excessive. First, Judge Williams' order to conduct "informal discovery" did not explicitly order the production of the materials at issue in Plaintiff's motion to compel. Although Defendant clearly did not follow the spirit of Judge Williams' order, Defendant's actions should not subject Defendant to the extreme sanction sought by Plaintiff. Second, although Defendant's response to Magistrate Judge Pallmeyer's order was not exemplary, Defendant attempted to comply with such order by beginning to produce the records requested by Plaintiff and submitting three affidavits attempting to explain the tardiness. Finally, and most importantly here, Plaintiff has not really suffered any injury because it has already received the information it requested (with there being no pending trial date), and, because this court has determined that sanctions are available under Rule 37(a)(4), Plaintiff will be reimbursed for its efforts in making its motion(s) to retrieve the tardy information.

In sum, although this court does not condone Defendant's actions undertaken during discovery, in the exercise of its discretion considering the totality of the circumstances, the court does not find that Defendant's actions warrant the drastic sanction of striking Defendant's affirmative defenses pursuant to Rule 37(b)(2).[5]

---

4. Parenthetically, Judge Williams denied this earlier motion to compel as moot and denied sanctions.

5. Plaintiff also seeks, pursuant to Fed.R.Civ.P. 37(c)(1), certain evidentiary findings in its favor

to be presented to the jury at trial. As an initial matter, Rule 37(c)(1) may not apply here because Defendant's obligation to disclose the discovery at issue arose under Federal Rules of Civil Procedure 33 and 34. *See, e.g., Naiditch v. Banque De*

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is granted in part and denied in part. The parties are hereby directed to attempt to resolve the issue of reasonable expenses (including fees) recoverable under Rule 37(a)(4) during the next twenty-one (21) days. If this issue cannot be informally resolved, Plaintiff is given forty-two (42) days from the date of this opinion to file an itemized petition for the costs of making its motion(s).[6] Defendant shall, if it deems it necessary, respond to such fee petition twenty-one (21) days thereafter. Any objection filed should be stated with particularity and clarity. *See Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir.1985).

*Gestion Privee–Sib*, No. 92 C 5290, 1995 WL 117872, at *3 (N.D.Ill. March 15, 1995). Regardless of whether Rule 37(c)(1) remedies are fitting in this circumstance as a general matter, this court will not determine whether evidentiary findings are appropriate here because such a decision is properly presented by motion *in limine* at the applicable time to the district judge who will preside at the trial.

6. It bears noting that in determining the reasonableness of an attorney's billing rate, courts have stated that the "best measure" is the attorney's standard rate or the rate that he or she would earn from other paying clients. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993).

This amount must be capped "at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir.1996).

Also, Plaintiff has indicated that it will ask the court for reimbursement of "tens of thousands of dollars" in additional expenses, including depositions and investigations, incurred by Plaintiff because of Defendant's discovery abuses. (*See* Pl. Sec. Supp. Br. at 9; Pl. Reply at 14–15.) Rule 37(a) entitles Plaintiff solely to expenses incurred "in making the motion." The Court would appreciate if Plaintiff is cautious not to petition this Court for expenses other than those solely attributable to the "making" of the "motion[s]" under law.