NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0152n.06

No. 11-3050

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

WANDA CROOKS, )
 )
 Plaintiff-Appellant, )
 )
v. ) ON APPEAL FROM THE UNITED
 ) STATES DISTRICT COURT FOR THE
HAMILTON COUNTY, OHIO; ) SOUTHERN DISTRICT OF OHIO
HAMILTON COUNTY, OHIO BOARD OF )
COUNTY COMMISSIONERS; and )
WILLIAM DEAN, )
 )
 Defendants, )
 )
ANTHONY J. GARDNER, )
 )
 Defendant-Appellee. )

Before: CLAY, SUTTON and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. Officer Anthony Gardner arrested Wanda Crooks, then sixty-five years old, for passing a bad check. He handcuffed her behind back, prompting Crooks and her son to ask him to handcuff her in front of her body to accommodate her arthritis, a request he repeatedly denied even as she cried in pain during a thirty-minute ride to the county jail. Experiencing soreness in her shoulders and elsewhere, Crooks went to several doctors soon after the arrest and learned that she had a broken rib and an aggravated chest wall. This evidence and other features of the encounter, as construed in Crooks's favor, entitle her to take this § 1983 Fourth Amendment excessive-force claim to a jury.

I.

On September 2, 2008, a police officer in Union Township, Ohio executed a felony arrest warrant from Hamilton County for Wanda Crooks, stemming from a bad rent check. R.32 at 51. The officer drove Crooks to the county line, where he transferred her to Hamilton County Deputy Anthony Gardner. Crooks told Gardner she had arthritis as well as "really bad issues" with her neck, back and shoulders, and asked to be handcuffed in front—an accommodation the Union Township officer had just made for her. R.32 at 53. Although Gardner did not worry that Crooks posed a threat, he did not think Crooks came within any exception to the county's policy of handcuffing all arrestees behind their back during transport. The policy provided an exception for elderly people arrested for minor offenses, but Gardner considered age 66 the threshold for "elderly"—Crooks was 65—and thought a felony could not be a "minor offense." R.24-7 at 3. The policy also permitted exceptions for arrestees whose "physical condition precludes handcuffing to the rear," but Gardner rejected that possibility because Crooks did not cry out in pain when he initially cuffed her behind the back. R.24-7 at 3–4.

Soon after Gardner placed Crooks in the police car, her son arrived. He told Gardner his mother was having "a lot of pain from her arms being handcuffed behind her back" and asked Gardner to move the cuffs to the front. R.33 at 34. "I don't know what to tell you," Gardner replied. "This is how it is." R.33 at 34. Gardner drove Crooks to the county jail. Crooks cried throughout the thirty-minute trip, asking Gardner to loosen the cuffs.

Prosecutors dropped the charge the next day and released her from jail. Later that day, Crooks attended a pre-scheduled doctor's appointment. She reported that she was "doing worse this past month secondary to a recent arrest." R.23-9 at 8. The nurse noted "increasing pain to her shoulders and neck" in the wake of the handcuffing incident. R.23-9 at 8. Two days later, she visited the emergency room complaining of pain in her chest; doctors attributed it to a problem in the chest wall" likely caused by lifting, twisting, coughing or vomiting. R.23-8 at 27. An x-ray taken about a week after the arrest did not reveal any fractures, but a second x-ray taken a week after that suggested an acute chest wall injury and a rib fracture.

Crooks sued Gardner, alleging he used excessive force in handcuffing her, violating the Fourth (and Fourteenth) Amendment's prohibition on "unreasonable . . . seizures." The district court granted Gardner's motion for summary judgment, holding that Crooks failed to present sufficient evidence of injury stemming from the arrest and that Gardner at any rate did not violate any clearly established constitutional right.

II.

When construed in Crooks's favor, the evidentiary record establishes a triable issue of fact over whether Officer Gardner used excessive force in securing her. Our decision in *Walton*, points the way. *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993), *superseded by statute on other grounds as recognized by Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007). An officer pulled over Barbara Walton after he observed her two-year-old granddaughter standing

on the front passenger seat without a child restraint. *Id.* at 1333. When the officer discovered Walton was driving with a suspended license, he placed her under arrest. *Id.* at 1333–34. Walton told the officer that she was returning from the doctor's office after receiving treatment for her sore shoulder and asked the officer not to handcuff her in the back. *Id.* at 1334. The officer refused. Once in the police vehicle, Walton cried, told the officer that her shoulder hurt and asked him to remove the handcuffs. *Id.* The officer again refused, saying they would get to the station shortly. *Id.*

Walton sued. We denied the officer's qualified-immunity defense, concluding that "[a]n excessive use of force claim could be premised on [the officer's] handcuffing Walton if he knew that she had an injured arm and if he believed that she posed no threat to him." *Id.* at 1342. The parallel between the two cases is difficult to ignore. Here, as in *Walton*, a woman who posed no threat to the officer or anyone else asked to be handcuffed in front instead of behind her back because of her medical condition. And here, as in *Walton*, the officer's refusal to accommodate the request created a triable issue of fact over excessive force.

Since *Walton*, it is true, our circuit has adopted another requirement for handcuffing excessive-force claims: physical injury. Absent an "allegation of physical injury," we held in *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) (footnote omitted), "the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." Crooks satisfies this requirement as well. She reported

"increasing pain to her shoulders and neck" to her doctor the following day, R.23-9 at 8, and emergency-room doctors diagnosed a "chest wall problem" three days after the arrest, R.23-8 at 27. An x-ray taken a week and a half later indicated a broken rib and an "acute chest wall injury." R.23-8 at 26. Based on this evidence, a jury reasonably could conclude that Crooks broke her rib and injured the wall of her chest while riding in the car because Gardner handcuffed her from behind.

Gardner points out that an intervening x-ray, taken closer in time to the incident, did not show a fracture. But it is hardly implausible that the first x-ray technician missed the fracture the later x-ray revealed, especially given Crooks's repeated reports to medical professionals that the chest pain started around the time of her arrest. It is for a jury, not us, to decide whether excessive force or something else caused the fracture.

No doubt, it is not everyday that handcuffing an individual's hands behind her back leads to a broken rib. But it also is not everyday that the police handcuff a 65-year-old, arthritic woman from the back for a non-violent crime and in the face of persistent claims of pain. The key point is that any skepticism of her injury is not "so objectively compelling that no reasonable juror could believe" Crooks's explanation. *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).

Taking a different tack, Gardner argues that the constitutional yardstick for measuring his actions is not the Fourth Amendment but the "substantially higher" requirements of the Fourteenth Amendment's Due Process Clause. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001).

- 5 -

But Gardner never raised this argument before the district court, and we decline to address it for the

first time on appeal. *See United States v. Boumelhem*, 339 F.3d 414, 428 (6th Cir. 2003).

IV.

For these reasons, we reverse and remand the case to the district court for further

proceedings.